IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DIANA JAMES on behalf of**　　　　　　　　　6:11-cv-06399 RE
　　　　**JOSEPH A. JAMES,**

　　　　　　　　Plaintiff,　　　　　　　　**OPINION AND ORDER**

　　　v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

　　　　　　　　Defendant.

**REDDEN**, Judge:

Plaintiff Diana James ("James") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her deceased husband's claim for disability insurance benefits ("DIB"). For the reasons set forth below, the decision of the Commissioner is affirmed and this matter is dismissed.

/ / /

1 - OPINION AND ORDER

## BACKGROUND

James filed his application for DIB on April 1, 2004, alleging disability since August 31, 2003, due to depression, anxiety, lack of sleep, hearing loss, asthma, Post Traumatic Stress Disorder ("PTSD") and suicidal ideation. Tr. 172. James was 45 years old on September 30, 2005, the date his insured status expired. His application was denied initially and upon reconsideration. A hearing was held in December 2006. Tr. 1179-1224. The Administrative Law Judge ("ALJ") found him not disabled. James's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

James sought review in this court, and on May 18, 2009, Judge Anna J. Brown remanded this matter to the Commissioner. Tr. 1286-1306. Judge Brown determined that the ALJ did not err when she found James less than fully credible, and when she rejected the opinion of Paul Zeltzer, M.D. Judge Brown determined that the ALJ did not err when she failed to give "great weight" to the Veterans' Administration award of 100 percent disability to James. Judge Brown found the ALJ did not err when she failed to address the statement of Ingrid Duvall, but did err when she failed to address the opinion of treating physician Scott Mendelson, M.D., Ph.D.

A second hearing before an ALJ was held on June 4, 2010. The ALJ found him not disabled. Tr. 1231-38.

James's insured status for DIB expired on September 30, 2005. Thus, the relevant period under consideration is from August 31, 2003, James's alleged onset date, through September 30, 2005.

///

///

## ALJ's DECISION

The ALJ found James had the medically determinable severe impairments of asthma and polysubstance abuse. Tr. 1233.

The ALJ found that James's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 1234.

The ALJ determined that James retained the residual functional capacity ("RFC") to perform a range of medium work, limited to simple, routine tasks that avoid close interaction with co-workers or the general public in a work setting that avoids concentrated exposure to respiratory irritants or hazards. Tr. 17. The ALJ found that James could sit or stand or walk for up to six hours. Tr. 1235. James disputes this finding.

The ALJ found James could not perform his past relevant work. Tr. 1236.

The ALJ found that there was other work existing in significant numbers in the national economy that James could perform. Tr. 1237. Accordingly, the ALJ found James not disabled.

## DISCUSSION

James contends that the ALJ erred by improperly rejecting the opinions of treating providers and lay witnesses.

### I. Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.

3 - OPINION AND ORDER

*Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### A. Scott Mendelson, M.D., Ph.D.

On April 5, 2004, James was taken to the Mercy Medical Center hospital by his wife who was worried about "persistent suicidal ideation." Tr. 287. He was voluntarily admitted and assessed by Dr. Mendelson, a psychiatrist. Tr. 288. Dr. Mendelson noted "an extensive 10 year history of psychiatric treatment in the VA system," and several previous suicide attempts, including an intentional overdose of medication a few days earlier. Tr. 288. The doctor noted a recent history of alcohol and methamphetamine abuse, though James's urine toxicity screen was negative.

James reported poor sleep, nightmares regarding previous traumas, crying spells, lack of energy, poor concentration, racing thoughts, anhedonia, hopelessness, and guilt. James also reported anger and irritability, and suicidal thoughts with hopelessness and helplessness. Tr. 288.

Dr. Mendelson wrote that James was "not a terribly good historian partly because '[i]t is all a blur.'" *Id.* James reported having taken multiple medications, none of which really helped. James had attempted suicide by overdose in 1981, 1982, 1995, and the prior week.

As to mental status, Dr. Mendelson wrote:

> He is dressed in clean, casual clothes. He is alert and cooperative. However, he is quite psychomotor retarded. He has quite poor eye contact, only rarely glancing up for a second or two. His speech is spontaneous and fluent but rather slow and almost monotone. He describes his mood as extremely depressed and his affect is quite

4 - OPINION AND ORDER

> blunt and dysphoric in tone. His thought processes are logical and linear, tending to be rather circumstantial, but certainly without flight of ideas or looseness of association. He continues to endorse suicidal ideation and hopelessness. No homicidal ideation. I believe that he is free of any true hallucinations, although at times he may have some auditory elusions secondary to anxiety. He has no delusions. His insight and judgment are essentially intact. Estimated intelligence is at least average.

Tr. 289-90.

Dr. Mendelson diagnosed Bipolar affective disorder type 2, depressed, posttraumatic stress disorder, consider attention hyperactivity disorder, strong cluster C traits, chronic obstructive pulmonary disease, chronic pain, and assessed a GAF of 35 on intake. He prescribed Lamictal, Effexor, Ritalin, and Seroquel and discontinued the trazodone and Celexa. He continued Clonazepam and Vistaril. Tr. 291.

James was discharged on April 12, 2004. Tr. 309.

On May 8, 2004, James intentionally overdosed on prescription medication and returned to Mercy Medical Center. Tr. 309. Dr. Mendelson examined him on May 10, 2004:

> He is curled up in a near fetal position when I see him. He is quite psychomotor retarded. His speech is very slow, low volume, almost monotone. His affect is quite flat. He describes his mood as "shitty." His thought processes are quite concrete. He volunteers next to nothing, answers questions with only a few words. He continues to have suicidal ideation, feels that life is not worth living. Interestingly, he also asked to go home. He has no homicidal ideation. He denies any hallucinations. No systematized delusions. His insight and judgment are essentially intact. Estimated intelligence is at least average.

Tr. 311.

Dr. Mendelson wrote:

///

5 - OPINION AND ORDER

> He has had a rather chaotic life: Multiple marriages, history of
> substance abuse, an extremely-severe betrayal of his brother and
> his own marriage in having an affair with his brothers' wife.
> He has had life-long complaints about persecution by other people,
> in some cases these were rather bizarre....Thus, his psychiatric
> diagnoses are formed from a rather complex constellation of
> problems that I believe stretch across both Axis I and Axis II illnesses.
> He has not responded well to antidepressants. There is a family history
> of bipolar disorder and this is entirely likely that a major component
> of this constellation of problems is bipolar affective disorder type II.
> It is also possible that he has attention deficit disorder, which is con-
> sistent with his reports of poor performance in school and chronic
> complaints from teachers. As an adult, the ADHD often presents with
> erratic behavior, substance abuse, and a failure to succeed in the path
> ways of life. He does complain of PTSD, which could certainly be a
> component of his presentation; although almost everything is explained
> fairly adequately by bipolar disorder, attention deficit disorder, and
> personality disorders of the cluster B and C type. There does not appear
> to be any substance abuse at this time.

Tr. 311-12.

Dr. Mendelson diagnosed Bipolar affective disorder type II, attention deficit hyperactivity disorder, likely PTSD, Personality disorder not otherwise specified with cluster B and C traits. Tr. 312. He noted severe psychosocial stressors, and assessed a GAF on intake of 40. *Id.*

On May 13, 2004, Dr. Mendelson wrote a letter To Whom It May Concern. Tr. 306. He stated:

> Mr. James has the following diagnoses: Bipolar Affective Disorder,
> Type II; Post Traumatic Stress Disorder (PTSD); Attention Deficit
> Hyperactivity Disorder (ADHD).
>
> His Bipolar disorder and ADHD are life long and require chronic
> treatment. In addition, his Bipolar Depression is currently treatment
> resistant and making him incapable of working.

*Id.*

6 - OPINION AND ORDER

James was discharged on May 26, 2004. Tr. 307. In his Discharge Summary, Dr. Mendelson wrote that James had been discharged on April 12 and readmitted on May 10, 2005. "Apparently he had difficulty getting medication from the VA Medical Center and never recovered the degree of stability that was seen at discharge." Tr. 307. The doctor noted that he thought the most effective medication was the addition of Mirapex, and James "began to feel well in a way he had not remembered feeling in quite a few years." *Id.* Under 'Condition on Discharge," Dr. Mendelson wrote:

> On the morning of 05/26/04 the patient was well groomed, alert and cooperative. He had normal psychomotor activity and speech. He described his mood as 'I'm doing good', though he admitted a little apprehension in leaving. His affect was indeed cheerful. No suicidal or homicidal ideation. Thought processes were logical and linear. No hallucinations or delusions. Insight and judgment were intact. Vital signs were stable. No ill effects of medication.

*Id.*

Discharge diagnoses were Bipolar affective disorder type 2, ADHD, PTSD, and personality disorder, not otherwise specified. Dr. Mendelson assessed a GAF of 60.

James returned to the emergency room on July 21, 2004, complaining of poor sleep, suicidal ideation, and leg swelling. Tr. 354. He was admitted and examined by Dr. Mendelson on July 22. James reported that in mid-June he developed nightmares and nocturnal enuresis. He assumed this was from the Seroquel, and stopped taking it, although he thought his wife had surreptitiously restarted it. He developed severe peripheral edema, which Dr. Mendelson noted may be caused by the Mirapex. Dr. Mendelson wrote that James had deteriorated over the last three weeks or so with persistent suicidal ideation with a plan to overdose, and increasingly poor sleep with nightmares. Tr. 350.

7 - OPINION AND ORDER

James reported that he cried a lot, was anhedonic and hopeless, and had no energy. "He states that he might be seeing things, although these are shadows out of the corner of his eye that are likely the illusions of anxiety....Finally, I might note that while he insists he has been compliant with his medications, he has not followed up with counseling as was suggested at the time of discharge in May." *Id.*

Dr. Mendelson diagnosed Bipolar affective disorder, type II, PTSD, ADHD, polysubstance abuse in remission, personality disorder, NOS, severe peripheral edema, obesity, and chronic bronchitis, and assessed a GAF of 35. Tr. 353. He continued all medications except the Mirapex.

The ALJ noted Dr. Mendelson's May 2004 opinion that treatment-resistant "Bipolar Depression" rendered James unable to work, and rejected it as a conclusion reserved to the Commissioner and outside the medical realm, citing 20 C.F.R. 404.1527(e). Tr. 1234.

## B. Subsequent Medical Evidence

### (1) Jeannette Oleskowicz, M.D.

The ALJ wrote:

> Subsequent medical evidence suggests that Dr. Mendelson's observations represent only a snapshot of a single episode, rather than an ongoing picture of Mr. James' mental health or compliance with treatment. VA psychiatrist Jeannette Oleskowicz, M.D., noted in September 2004 that Mr. James was alert and fully oriented, with good eye contact and coherent linear thoughts [citation omitted.]. He denied any hallucinations or suicidal ideation and reported [sic] rated his mood at '9/10'[citation omitted]. Dr. Oleskowicz reported no evidence of either bipolar disorder or ADHD.

*Id.*

8 - OPINION AND ORDER

Dr. Oleskowicz examined James on September 18, 2004. Tr. 602-03. James was referred to the Veterans' Administration by the emergency room for suicidal ideation and depression. James had several plans for suicide including by shotgun, nail gun and overdose. Tr. 602. He reported nightmares over the past week, and visual hallucinations of his "little friend Philip." James reported paranoia and that he kept a machete between the mattress and the box spring of his bed. Tr. 603. He stated that he had recently been taken off ritalin, reported that his mood was 9/10, and that he no longer had suicidal ideation. *Id.* Dr. Oleskowicz wanted to admit James to the hospital in order to adjust his medications but he refused and left against medical advice. Dr. Oleskowicz assessed PTSD, chronic, history of substance abuse, and assessed a GAF of 40.

Dr. Oleskowicz's opinion and assessment do not provide a clear and convincing or specific and legitimate reason to discredit Dr. Mendelson's opinion.

**(2) VA Treatment Providers**

The ALJ continued:

> VA treatment providers noted in March 2006 that there was 'no clear evidence of a bipolar spectrum disorder or ADHD' at the time [citation omitted].

Tr. 1234.

The March 2006 record the ALJ refers to are notes made by Michael C. McNamara, Psych/MH Nurse Practitioner. Tr. 1158-64. Mr. McNamara saw James to follow up on his PTSD, depression, and anxiety. Tr. 1159. Mr. McNamara noted that James was alert, attentive and oriented, with slow speech, and anxious and dysphoric mood. James reported racing thoughts and Mr. McNamara noted his insight was limited and judgment was impulsive. Under

9 - OPINION AND ORDER

Mental Status Comments, Mr. McNamara noted "No clear evidence of a Bipolar Spectrum Disorder or ADHD at this time, but it requires assessment over time." Tr. 1162.

Mr. McNamara's notes do not constitute a clear and convincing or specific and legitimate reason to discredit Dr. Mendelson.

### (3) Richard Turner, M.D.

The ALJ stated:

> VA psychiatrist Richard Turner, M.D., noted that Mr. James had failed to follow through with counseling sessions and consumed '10 beers and a pint of whiskey daily,' along with 'a gram of methamphetamine daily' [citation omitted]. Dr. Turner restricted his diagnoses to drug and alcohol dependence, with no mention of either bipolar disorder or ADHD [citation omitted].

Tr. 1234.

Dr. Turner treated James since at least August 2001. Tr. 994. In May 2002 Dr. Turner diagnosed depressive disorder NOS, and noted that James was psychiatrically stable. Tr. 973. In October 2003, James was admitted for treatment of methamphetamine and alcohol addiction. Tr. 930.

In January 2004, Dr. Turner noted that James's mood was good, his anxiety was gone, and he was able to concentrate. Tr. 722. In February 2004, Dr. Turner reported that James had a euthymic mood and was psychiatrically stable. Tr. 710. Dr. Turner assessed a GAF of 75. Tr. 711.

James was discharged from the VA hospital on March 29, 2004, and Robert Higginbotham, M.D., a psychiatrist, diagnosed depressive disorder, NOS, alcohol dependence,

other substance related disorder, NOS, and attention deficit without hyperactivity. Tr. 439. Dr. Higginbotham reported improved mood and no suicidal or homicidal ideation.

On April 29, 2004, Dr. Turner noted that James reported "further improvement in mood, and further reduction in anxiety...." Tr. 639

Dr. Turner conducted a mental health assessment on February 13, 2006. Tr. 550-55. James was legally mandated to go into a substance abuse treatment program as the result of an arrest for driving under the influence. Tr. 551. In addition to the 10 beers, pint of whiskey, and gram of methamphetamine, Dr. Turner noted that James had last abused cocaine two months prior to the examination. Tr. 551.

It was James's eighth admission with diagnoses of alcohol and poly-substance abuse since 1995. Dr. Turner stated that James had a history of suicidal ideation and attempts, and that he "characteristically...does not follow through with therapeutic recommendations." *Id.* Dr. Turner described James as sullen and annoyed. James "implied he wanted help but 'no one' was helping him. He avoided eye contact." *Id.* Dr. Turner stated that staying clean and sober was not a priority for James, and James was unwilling to make changes in his life. His mood was sullen, his affect guarded, he was oriented. Dr. Turner noted no symptoms of PTSD were apparent, and diagnosed alcohol and methamphetamine dependence, continuous, cocaine abuse, episodic, and assessed a GAF score of 51. Tr. 554.

Dr. Mendelson treated James from April through July 2004. Dr. Turner treated James from at least August 2001 through February 2006. Their opinions and diagnoses conflict. The evidence could result in "more than one rational interpretation," and the ALJ's conclusion to grant more weight to Dr. Turner than Dr. Mendelson must be upheld. *Burch v. Barnhart*, 400

11 - OPINION AND ORDER

F.3d 676, 679 (9th Cir. 2005). The ALJ offered clear and convincing, and specific and legitimate, reasons to give Dr. Turner's opinion greater weight than Dr. Mendelson's.

### (4) Michael McNamara, Psych/MH Nurse Practitioner

In March 2010, Mr. McNamara completed a Mental Residual Functional Capacity form indicating that James had numerous "marked" limitations, starting before his first examination in August 2005. Tr. 2040-2043. As a nurse practitioner, Mr. McNamara is not an acceptable diagnostic source and cannot establish the existence of a medically determinable impairment. 20 C.F.R. § 404.1513. Unless a nurse practitioner is working "closely with" and "under the close supervision" of a particular acceptable medical source, an ALJ need only give a germane reason for rejecting that opinion. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

The ALJ noted Mr. McNamara's 2010 opinion, and found that it was not consistent with his own clinical records. Tr. 1236. The Commissioner notes that in March 2006, much closer to the date last insured, Mr. McNamara reported that James was oriented, alert, cooperative and had a normal, coherent thought process. Tr. 1236, 1162. He denied suicidal ideation and was not a significant risk to himself or others. *Id.* In July 2006 Mr. McNamara noted that James was doing well and much improved while taking his medications. Tr. 1140. He reported no suicidal ideation and decreased anxiety.

The ALJ noted that Mr. McNamara's assessment of James was not submitted at the first hearing, and his recollection of events nearly five years later was not likely to be as fresh in his mind as his more recent encounters with James, all of which occurred after the date last insured. Tr. 1236.

The ALJ correctly identified germane reasons for rejecting Mr. McNamara's opinion.

## II. Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

James contends that the ALJ improperly failed to discuss the lay witness testimony of his wife, Diana James, and the statement of his step daughter, Shannon Koehler.

The Commissioner argues that the ALJ did not err by failing to discuss the lay evidence because the statements were not significant or probative, citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Ms. Koehler submitted a one paragraph statement in which she stated that on three occasions she had helped her mother with the campground maintenance work because James "was to [sic] stressed out to deal with it." Tr. 1245. The ALJ did not err by failing to discuss this statement because it is not significant or probative.

13 - OPINION AND ORDER

Ms. James testified at the June 2010 hearing, but not at the December 2006 hearing. This court has already determined that the ALJ properly found James less than fully credible. Tr. 1296-98. Ms. James's testimony was found not fully credible in the first ALJ decision in this matter, which was adopted by reference in this ALJ decision. Tr. 28, 1236. The ALJ's failure to discuss Ms. James's testimony harmless. *Molina v. Astrue,* 674 F.3d 1104, 1118-19 (9th Cir. 2012).

### III. Step Five

For the reasons set out above, the ALJ's determination of James's residual functional capacity is supported by substantial evidence.

### CONCLUSION

For these reasons, the ALJ's decision that James was not disabled as of September 30, 2005, his date last insured, is based on correct legal standards and supported by substantial evidence. The decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated this 25 day of February, 2013.

JAMES A. REDDEN
United States District Judge